# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**NORTHERN DIVISION**

| | |
|---|---|
| **VALERIE TURNER, on behalf of herself and others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FIVE GUYS ENTERPRISES, LLC, FIVE GUYS OPERATIONS, LLC, and FIVE GUYS RA, LLC**<br><br>**Defendants.** | **Case No. 1:11-cv-03718 (RDB)** |

**STIPULATION AND SETTLEMENT AGREEMENT**

Subject to approval of the Court, this Stipulation and Settlement Agreement is made and entered by and between Plaintiff Valerie Turner ("Plaintiff Turner"), the putative class members who timely file a consent to join the above-referenced lawsuit and return a claim form, and the agents, heirs, executors, administrators, beneficiaries, trustees, and legal representatives of each of them ("Opt-In Plaintiffs") (collectively "Plaintiffs"), and Defendants Five Guys Enterprises, LLC ("FGE"), Five Guys Operations, LLC ("FGO") and Five Guys RA, LLC ("FGRA") and each of their present or former officers, directors, subsidiaries, affiliates, partners, shareholders, employees, agents, attorneys, accountants, executors, administrators, personal representatives, heirs, successors and assigns (collectively "Defendants").

## I. BACKGROUND

1. On December 23, 2011, Plaintiff Valerie Turner commenced this Action by filing a complaint in the United States District Court for the District of Maryland, Northern Division (the "Court"), entitled *Turner v. Five Guys Enterprises, LLC et al.*, Case No. 1:11-cv-03718

(RDB) (the "Action"). In her complaint, Plaintiff Turner asserted violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"), on behalf of herself and other individuals who had been employed as "assistant store managers-in-training". Plaintiff alleged that she was not properly classified as exempt during the period of time that she was an Assistant Manager during the period of time that she was training to become an Assistant Manager (the "Training Period") and was not paid overtime wages for hours worked over 40 during the Training Period. Defendants contend that there is no such position or classification as an "assistant manager-in-training" at Five Guys. The parties need not resolve any dispute over the terminology relating to the position as they agree for purposes of this settlement that the collective action members will consist of all exempt Assistant Managers who spent time in a Training Period.

2. On February 21, 2013 the Parties engaged in an all-day mediation session under the direction of mediator John E. Sands, Esq., an experienced class and collective action mediator.

3. The Parties' ongoing settlement negotiations have culminated in this Agreement.

4. It is the desire and intention of the Parties that this Agreement shall, for each member of the Settlement Collective, fully, finally, and forever completely settle, compromise, release, and discharge any and all Released Claims (as defined below).

5. Plaintiff's Counsel has conducted a thorough investigation of the claims that Plaintiff asserted against Defendants in the Action and/or that relate to or could have arisen out of the same facts alleged in the Action or relating to Plaintiff's and the Settlement Collective members' employment, including both asserted and unasserted claims. Although Plaintiff believes that the claims asserted in the instant Action have merit, Plaintiff recognizes and

acknowledges the potential expense and length of continued litigation through trial and possible appeals. Plaintiff also has taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in such litigation and the likelihood of protracted appellate review. Relying upon their fact investigations and analyses, the Parties have engaged in intensive arm's length negotiations with a view to achieving a mutually acceptable settlement. Plaintiff believes that the settlement reached confers substantial benefits upon the Plaintiff and putative collective action members and that the settlement is fair, reasonable, adequate, in accordance with the law, and in the best interests of the Plaintiff and putative collective action members

6. Released Persons expressly deny any liability or wrongdoing of any kind associated with any and all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in this Action and Plaintiff's Complaint. Released Persons contend they have complied with all applicable federal and state laws at all times. By entering into the Agreement, Defendants do not admit any liability or wrongdoing and expressly deny the same. It is expressly understood and agreed by the Parties that the Agreement is being entered into by Defendants solely for the purpose of avoiding the costs and disruption of ongoing litigation and resolving the claims asserted in the Action on the terms set forth herein. Nothing in the Agreement, the settlement proposals exchanged by the Parties, or any motions filed or Orders entered pursuant to the Agreement, may be construed or deemed as an admission by Released Persons of any liability, culpability, negligence, or wrongdoing, including that any Settlement Collective member was misclassified as exempt, and the Agreement, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to

in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the Agreement. Furthermore, neither the Agreement, any motions filed, information and/or documents exchanged by the Parties in preparation for the mediation, settlement proposals exchanged by the Parties, or Orders entered pursuant to the Agreement, shall constitute an admission, finding, or evidence that any requirement for representative litigation or class certification has been satisfied in this Action or any other action, except for the limited settlement purposes set forth in this Agreement.

7. This Agreement shall automatically terminate, and the certification of the Settlement Collective shall automatically be cancelled if this Agreement is terminated pursuant to Section XV entitled "Termination of Settlement Agreement," in which event this Agreement shall not be offered, received, or construed as an admission of any kind concerning whether any class or collective is certifiable or any other matter.

8. The Parties shall request the Court approve, administer, and implement the Agreement with respect to all actions and claims settled in this Agreement.

## II. <u>DEFINITIONS</u>

9. "Action" means the civil action pending in the Court entitled *Turner v. Five Guys Enterprises, LLC et al.,* Case No. 1:11-cv-03718 (RDB).

10. "Approval Order" refers to the order of the Court: (i) directing consummation of its terms and provisions (iii) certifying the Settlement Collective for settlement purposes only;; (v) approving as to form and content the Settlement Notice and Claim Form and authorizing the first-class mailing of the Settlement Notices and Claim Forms to all members of the Settlement Collective; (vi) appointing Plaintiff's counsel as Collective counsel for the Settlement Collective pursuant to Section 216(b) of the FLSA; (vii) awarding Collective Counsels' their agreed upon fees, costs and expenses; (viii) appointing a third-party claims administrator who is acceptable to

the Parties as the Claims Administrator pursuant to Section V; and (ix) setting a forty-five (45) calendar day deadline for the execution and return of fully completed claims forms.

11. "Authorized Claimant" means a member of the Settlement Collective or the authorized legal representative of such member of the Settlement, who submits a timely and fully completed Claim Form and becomes entitled to receive a Settlement Payment.

12. "Bar Date" is the date that is forty-five (45) calendar days after the date on which the Claims Administrator post-marks the Settlement Notice and Claim Form Package to the members of the Settlement Collective. Members of the Settlement Collective must timely file a fully completed Claim Form Package (Claim Form and Substitute IRS W-9 Form) so that it is received by the Claims Administrator on or before forty-five (45) calendar days after the date Settlement Notice and Claim Form Packages are post-marked in order to be considered an Authorized Claimant.

13. "Claim Form Package" refers to document attached as Exhibit B, which will be provided as part of the Settlement Notice which will be mailed to members of the Settlement Collective pursuant to the terms of this Settlement Agreement.

14. "Claims Administrator" means the third-party claims administration firm mutually agreed upon by the Parties and appointed by the Court, which will perform all of the administrative duties assigned below in Section VII. The third-party claims administrator designated to serve as the claims administrator is Kurtzman Carson Consultants LLC.

15. "Collective Counsel" refers to Whitfield Bryson & Mason LLP, the Akaras Law Offices and Klafter Olsen and Lesser LLP.

16. "Collective Counsels' Fees, Costs, and Expenses" means the total amount of Collective Counsels' attorneys' fees, costs, and expenses agreed upon by the parties in an

amount not to exceed $115,080.75 of the Maximum Gross Settlement Amount. This amount is included in the Maximum Gross Settlement Amount.

17. "Complaint" means the Second Amended Complaint filed in the Action.

18. "Court" means the United States District Court for the District of Maryland.

19. "Defendants' Counsel" means Littler Mendelson, P.C., 1150 17th St., NW, Suite 900, Washington, DC 20036.

20. "Defendants" means Five Guys Enterprises, LLC, Five Guys Operations, LLC and Five Guys RA, LLC.

21. "Effective Date" refers to the first date after all of the following events and conditions have been met or have occurred: (1) the Court enters an Approval Order; (2) the Bar Date has passed; (3) the deadline has passed without action for counsel for the Parties to terminate the Settlement Agreement; and (4) the time to appeal from the Approval Order has expired and no Notice of Appeal has been filed or in the event that an appeal is filed, the appellate process is exhausted and the Approval Order has remained intact in all material respects. The Parties agree that the Court shall retain jurisdiction to enforce the terms of this Stipulation and Settlement Agreement unless specifically set forth otherwise herein.

22. "Incentive Payment" means such award that Defendant has agreed to pay to Plaintiff Valerie Turner in recognition of her efforts in obtaining the benefits of the Settlement for the Settlement Collective.

23. "Maximum Gross Settlement Amount" is $244,670.25. The Maximum Gross Settlement Amount represents the maximum amount that Defendants would pay pursuant to this Settlement Agreement if every member of the Settlement Collective participated in the settlement and received a Settlement Payment, inclusive of Settlement Payments, Collective

Counsels' Fees, Costs and Expenses, Incentive Payments, applicable taxes, and up to $12,500 of Claim Administrator Fees.

24. "Opt-In Consent" refers to timely filing with the Court of written consent to join this Action by a Settlement Collective member in compliance with the procedures set forth in the Settlement Agreement.

25. "Opt-In Period" refers to the period beginning with the date the Settlement Notice is post-marked to members of the Settlement Collective and ending forty-five (45) calendar days thereafter. Members of the Settlement Collective must timely file a Claim Form so that it is received by the Claims Administrator on or before 45 calendar days after the date the Settlement Notice is post-marked in order to receive any monetary benefits from the Settlement Agreement.

26. "Opt-In Plaintiff" refers to any individual who was employed by Defendants during the relevant time period as an Assistant Store Manager classified as exempt from overtime who spend an initial period of time as an Assistant Store Manager training, and who completes and timely returns a Claim Form pursuant to the terms of the Settlement Agreement.

27. "Parties" means Plaintiff Valerie Turner, and the members of the Settlement Collective who timely file a consent to join the above-referenced lawsuit and return a claim form, and Defendants.

28. "Plaintiff" refers to Valerie Turner who together with Collective Counsel covenant and represent that they are the duly-authorized legal agents for the Settlement Collective, including all Opt-In Plaintiffs, with respect to the Action and this Settlement Agreement, and that they have the legal right and authority to act as representatives of the Settlement Collective, including all Opt-In Plaintiffs, and to make decisions on their behalf

concerning the Action, the method and manner of conducting the Action, and the execution of this Settlement on behalf of the Settlement Collective, including all Opt-In Plaintiffs.

29. "Qualified Settlement Fund" means a fund consisting of one hundred twenty four thousand five hundred eighty-nine dollars and 50/100 ($124,589.50), the maximum amount that may be distributed to the Settlement Collective in accordance with the terms of this Agreement.

30. "Released Claims" refers to the released claims set forth in Section V.

31. "Released Persons" refers to Defendants Five Guys Enterprises, LLC, Five Guys Operations, LLC and Five Guys RA, LLC and each of their past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of its/their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, plan fiduciaries and/or administrators, benefits plans sponsored or administered by Defendants, divisions, units, branches and any other persons or entities acting on their behalf, including any party that was or could have been named as a defendant in the Action and any individual or entity which could be jointly liable with Defendant and any other persons or entities acting on its behalf, including any party that was or could have been named as a defendant in the Action.

32. "Releasing Persons" means each and every member of the Settlement Collective and his or her respective agents, attorneys, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

33. "Revised Maximum Gross Settlement Amount" means the Maximum Gross Settlement Amount minus all Collective Counsels' Fees, Costs and Expenses, Incentive

Payments, applicable taxes, and up to $12,500 of Claim Administrator Fees.

34. "Settlement" or "Settlement Agreement" means the terms and conditions set forth in this Stipulation and Settlement Agreement.

35. "Settlement Collective" refers to the putative collective of current and former employees of Defendants to be certified by the Court pursuant to Section 216(b) of the FLSA solely for the purpose of effectuating this Settlement Agreement. The Settlement Agreement shall consist of the following individuals and shall be defined as any and all employees of Defendants employed in the position of Assistant Store Manager who were classified as exempt from the overtime requirements of the FLSA, and who underwent an initial training period at any time during the period from December 23, 2008 through and including entry of the Approval Order.

36. "Settlement Notice" means a notice to the Settlement Collective describing the Settlement, including its application and effect, substantially in the form of Exhibit A attached hereto, or in such other form as may be approved by the Court. Each Settlement Notice shall include a Claim Form for each Opt-In Plaintiff.

37. "Stipulation" or "Agreement" means this Stipulation and Settlement Agreement.

## III. CERTIFICATION OF THE SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES ONLY

38. The Parties agree to request the Court to certify, for settlement purposes only, the Settlement Collective pursuant to Section 216(b) of the FLSA.

39. The Settlement Agreement is contingent upon the approval and certification of the Court of the Settlement Collective for settlement purposes only.

40. Defendants do not waive, and instead expressly reserve their rights to challenge the propriety of collective action certification for any purpose as if this Settlement Agreement

had not been entered into by the Parties should the Court not approve the Settlement Agreement or should counsel for a Party exercise its rights to terminate the Settlement Agreement.

41. Should this Settlement not become final, such stipulation to certification of the Settlement Collective as part of the Settlement shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context. Defendants expressly reserve their right to oppose collective action certification should this Settlement not become final.

## V. TERMS OF MAXIMUM GROSS SETTLEMENT AMOUNT

42. Any amounts that are not distributed to the Authorized Claimants as Settlement Payments or pursuant to Collective Counsels' Fees, Costs and Expenses, Incentive Payments, applicable taxes, and up to $12,500 of Claim Administrator Fees shall be retained by Defendants and will remain Defendants' sole and exclusive property.

43. In no event shall the total distribution and payments made by Defendants, including but not limited to Settlement Payments, Collective Counsels' Fees, Costs and Expenses, Incentive Payments, applicable taxes, and up to $12,500 of Claim Administrator Fees, exceed the Maximum Gross Settlement Amount.

44. Defendants may not be called upon or required to contribute additional monies above the Maximum Gross Settlement Amount under any circumstances. Authorized Claimants will be responsible for remitting to State and/or Federal taxing authorities any applicable other taxes due and shall hold Defendant harmless and indemnify Released Parties for any liabilities, costs and expenses, including attorneys' fees, assessed or caused by any such taxing authority which result from an Authorized Claimant's failure to remit taxes due on payments made to the Authorized Claimant pursuant to the Settlement Agreement.

45. Any interest earned on the Maximum Gross Settlement Amount during the period of settlement administration under this Settlement Agreement will remain Defendants' sole and exclusive property.

46. After reducing the Maximum Settlement Amount by the amount awarded by the Court for the Incentive Payment and Collective Counsel's attorneys' fees, costs and expenses as set forth immediately above, the remaining amount of One Hundred and Twenty Four Thousand Five Hundred Eighty-Nine Dollars and 50/100 Cents ($124,670.25) be allocated to the Qualified Settlement Fund ("QSF"). In no event will more than the total of $124,670.25 be allocated to the QSF.

47. Up to Twelve Thousand Five Hundred Dollars and 0/100 Cents ($12,500.00) of the cost of the mutually agreed upon Claims Administrator retained to administrate the settlement on behalf of the Parties will be reduced from the QSF.

48. Members of the Settlement Collective will be required to fill out and timely return a Claim Form to opt-into the Action in order to receive a settlement payment in accordance with the terms of the Settlement Agreement. The payments to the Settlement Collective will be allocated to class members on an equal basis out of the $124,670.25 QSF, after the amount of the employee's and the employer's FICA taxes and the Claims Administrator costs, as detailed in the above paragraph, are deducted. The minimum amount that will be paid to each Authorized Claimant will be listed on the Settlement Notice. In the event that some members of the Settlement Collective do not choose to fill out and return claim forms to collect a Settlement Payment, the amount of the Settlement Payment for the remaining Authorized Claimants will not be increased or otherwise reallocated.

49. Settlement Payments under this Settlement Agreement shall be treated in the

following manner:

a. The Parties agree that each Settlement Payment to be issued to each Authorized Claimant shall be separated into two equal amounts: fifty percent (50%) shall be allocated to the claims asserted in the Action for unpaid overtime and other wage-related damages, and fifty percent (50%) shall be allocated to the claims asserted in the Action for liquidated damages.

b. The Incentive Payment shall be treated as wage income for tax year 2013, and the Claims Administrator make the withholdings as required by law and report the income on an IRS Form W-2.

c. Each Settlement Payment shall be subject to all required employee paid payroll taxes and deductions (*e.g.*, federal income taxes, state income taxes, employee's share of FICA taxes, and other state-specific statutory deductions) and other authorized or required deductions (*e.g.*, garnishments, tax liens, child support). The portion allocated to liquidated damages shall be characterized as non-wage income to the recipient.

d. The Claims Administrator will report the wage portion to each Authorized Claimant on an IRS Form W-2, and the non-wage portion (including the Authorized Claimant's pro rata share of the amount approved by the Court for payment of Class Counsel's Fees, Costs and Expenses) on one or more IRS 1099 misc forms.

e. The Claims Administrator shall be responsible for issuing the settlement checks, less required withholdings and deductions, to each Authorized

Claimant and mailing the settlement checks, IRS Form W-2s and IRS 1099 misc forms to each Authorized Claimant and Class Counsel.

50. Members of the Settlement Collective who do not fill out and return a timely Claim Form to opt-in to the Action will not receive any payment from the QSF and any amounts allocated to those Settlement Collective class members will not be paid to any other Settlement Collective members.

## VI. COLLECTIVE COUNSEL'S FEES, COSTS, AND EXPENSES

51. Defendant will pay $115,080.50 in attorneys' fees and expenses to Collective Counsel and the other putative collective action members. This amount will be paid pursuant to the provisions of paragraphs 53 and 54. Collective Counsel has provided detailed time records to Mediator John E. Sands in connection to their incurred attorneys' fees and expenses. Mr. Sands has reviewed and certificated the reasonableness of the payment of $115,080.75 as contemplated by this Agreement. A copy of this certification is attached hereto as Exhibit C.

52. Payment of such Collective Counsel's Fees, Costs and Expenses to Collective Counsel as set forth in this Settlement Agreement shall constitute full satisfaction of any and all obligations by Released Persons to pay any person, attorney, or law firm (including but not limited to Collective Counsel) for attorneys' fees, expenses, or costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) incurred on behalf all members of the Settlement Collective and shall relieve the Released Persons of any other claims or liability to any person for any attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) to which any person may claim to be entitled on behalf of any members of the Settlement Collective for this Action. Upon payment of Collective Counsel's Fees, Costs

and Expenses hereunder, Collective Counsel and members of the Settlement Collective shall release Released Persons from any and all claims for attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) relating to this Action. Collective Counsel further represent and certify that they are not aware of any liens for attorneys' fees, expenses, or costs existing, filed, or asserted with respect to any of the claims asserted in this Action.

53. Collective Counsel shall be paid Collective Counsel's Fees, Costs and Expenses via electronic means. Prior to any payment of any amount designated as Collective Counsel's Fees, Costs and Expenses, each individual Collective Counsel shall provide Defendants and the Claims Administrator with consistent written instructions regarding how the amount shall be allocated (*e.g.*, which law firm to receive what amount) as well as all information necessary to effectuate such payments (*e.g.*, executed IRS Forms W-9). The Claims Administrator will issue a respective IRS Form 1099 misc for their award of Collective Counsel's Fees, Costs and Expenses.

54. Within thirty (30) calendar days of the Effective Date, the Claims Administrator will pay Collective Counsel's Fees, Costs and Expenses via electronic means, if the conditions above have been satisfied.

55. The Claims Administrator will report as income on an IRS Form 1099 misc each Authorized Claimant's pro rata share of the amount approved by the Court for payment of Collective Counsel's Fees, Costs and Expenses.

## VII. INCENTIVE PAYMENTS

56. Defendant shall make a lump-sum payment of $5,000 to Plaintiff as an Incentive Payment to compensate Plaintiff for her time, efforts, and active participation in this litigation,

including but not limited to providing documents, participating in meetings, and otherwise providing information relevant to this Action.

57. The Claims Administrator will make the Incentive Payment (in the amount approved by the Court) within thirty (30) calendar days after the Final Effective Date for Plaintiff Turner so long as she becomes an Authorized Claimant.

58. Incentive Payments shall be treated as wage income for tax year 2013, and the Claims Administrator make the withholdings as required by law and report the income on an IRS Form W-2. Incentive Payments shall be paid out of the Gross Maximum Settlement Award.

## VIII. RELEASE OF CLAIMS; WAIVER; ASSIGNMENT OF RIGHTS

59. Release by Settlement Collective Members: Effective as of the Effective Date, Plaintiff and each and every Settlement Collective member, with their agents, executors, administrators, personal representatives, heirs, successors, any future estates, assigns, and beneficiaries, and any and all of them (collectively, the "Releasing Parties"), voluntarily and with the available advice of counsel, fully and forever release, acquit, and acquit, and discharge the Defendants, its present or former officers, directors, subsidiaries, affiliates, partners, shareholders, employees, agents, attorneys, accountants, executors, administrators, personal representatives, heirs, successors and assigns, and any or all of them and all persons acting by, through, under, or in concert with any of them (collectively, the "Released Parties"), in their personal individual, official and/or corporate capacities, from any and all FLSA claims, and, to the extent permitted by law, all wage and hour claims of any nature, whether known or unknown, whether contingent or non-contingent, specifically asserted or not (including all claims for liquidated damages), which the Releasing Parties, or any of them, may assert anywhere in the world against the Released Parties, or any of them, relating to their time spent at as an Assistant

Manager while in training arising up to and including the date upon which the Order of Final Judgment and Dismissal With Prejudice is entered by the Court in this Action. This release does not extend to claims for workers' compensation, claims brought under Title VII of the Civil Right Act of 1964, or other statutory or common law claims unrelated to the payment or non-payment of compensation.

60. Release by Plaintiff Valerie Turner: In addition to the claims released pursuant to paragraph 61 above, effective as of the Effective Date, Plaintiff Valerie Turner voluntarily and with the available advice of counsel, fully and forever release, acquit, and acquit, and discharge the Defendants and all Released Parties, in their personal individual, official and/or corporate capacities, from all such claims and demands directly or indirectly arising out of or in any way connected with her employment with Defendants; claims or demands related to salary, bonuses, vacation/paid time off, fringe benefits, expense reimbursements, or any other form of compensation; claims pursuant to any federal, state or local law, statute, regulation, or cause of action including, but not limited to, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act, the Maryland Fair Employment Practices Act, State Government Article, Title 20, recodified as Article 49B to new State Article Title 20 (formerly Article 49B, §15, *et seq.*), the National Labor Relations Act (29 U.S.C. § 151 et seq.), the Equal Pay Act (29 U.S.C. § 206), the Civil Rights Acts (42 U.S.C. § 1981 and § 1988), and other state and local ordinances prohibiting discrimination in employment, and all other laws and regulations relating to employment including but not limited to any claims or allegations brought under any state or district statute or regulation for non-payment of wages, bonuses, or other compensation, such as the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501, *et seq.*, the Maryland Wage and Hour Law, Md. Code Ann.,

Lab. & Empl. § 3-401, *et seq.*; tort law; contract law; wrongful discharge; retaliation; discrimination; harassment; fraud; defamation; emotional distress; and breach of the implied covenant of good faith and fair dealing. However, this release does not include any claims that cannot be lawfully waived or released by private agreement.

61. Settlement Collective Members shall execute a release for all FLSA claims, and to the extent permitted by law, all wage and hour claims of any nature relating to their time spent as an exempt Assistant Manager while in training, in order to receive a settlement check. Any Settlement Collective Member who fails to execute a release, shall not receive a settlement check, and shall not be bound by the terms of this settlement.

62. Plaintiff and Settlement Collective Members accept the benefits provided herein as consideration in full and complete satisfaction and release of claims asserted in this Action or covered in this Settlement Agreement.

63. No Assignment: Plaintiff's Counsel and Plaintiff, for themselves and on behalf of the members of the Settlement Collective, represent and warrant that nothing which would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action. Upon the Effective Date of this Settlement Collective, members of the Final Settlement Collective shall be deemed to have given this warranty.

## IX. MEDIA AND CONFIDENTIALITY OBLIGATIONS

64. Prior to the filing of any motion for approval of the Settlement Agreement, Plaintiff Turner and Plaintiff's Counsel shall (a) not issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (b)

advertise any of the terms of the proposed settlement agreement through written, recorded or electronic communication. To the extent that Plaintiff Turner or Plaintiff's Counsel are contacted by the media about a proposed settlement agreement, they shall be permitted to respond to such inquiries only by stating the Parties have reached a tentative settlement subject to court approval, and that Plaintiff Turner and Plaintiff's Counsel believe they have reached a fair and reasonable settlement of the disputed claims. Plaintiff and her counsel may not disclose any of the specific terms of the agreement to anyone other than any settlement class members prior to the filing of the motion for approval.

65. Any press release issued through two week after the date of approval of the settlement will be negotiated and agreed upon by the Parties prior to its issuance.

66. The Parties agree to return all original Mediation Materials, as the term is defined in the Mediation Confidentiality Agreement entered into by the Parties, as well as any other materials provided to them by the opposing Party during the course of the Action as well as copies of the same. Return of these materials is to be completed within two weeks after the Approval Order is issued with verification to the other Party that all materials have been returned in accordance with this provision and the Parties' agreement.

## X. CLAIMS ADMINISTRATION

67. The parties have agreed to retain Kurtzman Carson Consultants LLC ("KCC") as the Claims Administrator for this action and jointly request to have KCC appointed by the Court to serve in this role.

68. Up to Twelve Thousand Five Hundred Dollars and 0/100 Cents ($12,500.00) of the Claim Administrator fees and costs are to be paid from the Maximum Gross Settlement Amount. This amount will be deducted from the Qualified Settlement Fund.

69. The Claims Administrator will perform all of the administrative duties assigned herein, including: (i) calculating the Qualified Settlement Fund amount; (ii) calculating the estimated, potential, and actual individualized Settlement Amounts for each member of the Settlement Collective and Final Settlement Collective; (iii) formatting and printing the Settlement Notice and Claim Forms and mailing a Settlement Notice and all appropriate forms to members of the Settlement Collective; (iv) notifying the counsel for all Parties of timely and untimely submissions of Claim Forms by members of the Settlement Collective; (v) notifying counsel for all Parties of, and resolving any disputes regarding, claims by any member of the Settlement Collective; (vi) copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party; (vii) receiving and reviewing the Claim Forms, submitted by members of the Settlement Collective to determine eligibility to receive a Settlement Payment; (viii) maintaining the original mailing envelope in which Claim Forms and other correspondence is received; (ix) mailing a Settlement Payment and Incentive Payment (if applicable) to Authorized Claimants; (x) electronically transferring Collective Counsels' Fees and Costs in accordance with the Settlement Agreement; (xi) ascertaining current address and addressee information for each Settlement Agreement and Claim Forms returned as undeliverable and conducting a second mailing to the current address, if ascertained; (xii) responding to inquiries of members of the Settlement Collective regarding the terms of settlement and procedures for submitting Claim Forms; (xiii) referring to counsel for the Parties all inquiries by members of the Settlement Collective regarding matters not within the Claims Administrator's duties specified herein; (xiv) promptly apprising counsel for the Parties of the activities of the Claims Administrator's; (xv) maintaining adequate records of its activities, including the dates of the mailing of Settlement

Notice(s) and mailing and receipt of Claim Form(s) and mailing of Settlement Payments and Incentive Payment, returned mail and other communications and attempted written or electronic communications with members of the Settlement Collective; (xvi) confirming in a declaration its completion of the administration of the Settlement Agreement; (xvii) timely responding to communications from the Parties or their counsel; (xviii) formatting, printing, and mailing to Authorized Claimants the Court's Approval Order; (xix) escheating non-negotiated checks to the appropriate state agency, to the extent required by applicable law; (xx) calculating and paying the Defendants' portion of taxes on Settlement Payments, including but not limited to all FICA and FUTA taxes on Settlement Payments; (xxi) performing all tax reporting duties required by federal, state, or local law; (xxii) setting up a Qualified Settlement Fund to which Defendants shall electronically transfer funds sufficient to enable the Claims Administrator to satisfy the payment obligations to members of the Settlement Collective and Collective Counsel's fees and costs; (xxiii) protecting Settlement Collective members' personal data, including Social Security numbers, from public disclosure; (xxvi) delivering to Collective Counsel and Defendants' counsel a CD containing all Settlement Collective member data, including information relating to the mailing of Claims Forms and the receipt of signed Claims Forms, and copies of all signed Claims Forms; (xxv) such other tasks contained in the Settlement Agreement; and (xxvi) such other tasks as the Parties mutually agree.

70. Counsel for the Parties have the right to review and approve any documents to be mailed by the Claims Administrator prior to their mailing, and the Claims Administrator may not mail any documents without first receiving written approval to send the documents from Collective Counsel and Defendants' counsel.

71. The Parties shall be permitted to conduct a risk assessment of the Claims

Administrator to verify that the Claims Administrator has in place an effective information security program capable of protecting the personal information of the members of the Settlement Collective. In addition, the Claims Administrator will be required to contractually obligate itself to maintain reasonable physical, administrative, and technical controls to protect such information. Either party may object to the selection of a Claims Administrator which does not pass the assessment process or which will not agree to reasonable contractual commitments regarding the security of member information.

## XI. NOTICE/APPROVAL OF SETTLEMENT AND SETTLEMENT IMPLEMENTATION

72. As part of this Settlement, the Parties agree to the following procedures for obtaining Approval of the Settlement and notifying the Settlement Collective:

a. Notice. Pursuant to the terms of the Approval Order, the Claims Administrator shall mail the Settlement Notice and Claim Form to the Settlement Collective class members. The Parties agree to the following procedures regarding notice to the Settlement Collective class members:

i. Within thirty (30) calendar days after entry of the Approval Order, Collective Counsel in cooperation with Defendants' Counsel will provide the Claims Administrator with a list setting forth the name, social security number, and most current mailing address available to the Parties of each Settlement Collective class member who was employed by Defendants as an exempt Assistant Store Manager since December 23, 2008 and worked an initial training period as an Assistant Store manager. The Claims Administrator shall calculate the Settlement Award for each Settlement Collective class member (using the assumption that each Settlement

Collective member will become or remains an Authorized Claimant and will submit a Claim Form) in conformity with paragraphs 49 and 50.

ii. Within thirty (30) calendar days following its receipt of the list of members of the Settlement Collective, the Claims Administrator shall provide counsel for the Parties with a list setting forth the amounts to be paid to each Settlement Collective class member (using the assumption that each Settlement Collective member will become or remains an Authorized Claimant and will submit a Claim Form) as calculated by the Claims Administrator in conformity with paragraphs 49 and 50.

iii. The Claims Administrator shall provide its calculations to Collective Counsel and counsel for Defendants. The calculations to be provided to Collective Counsel shall identify Plaintiff and Opt-In Plaintiffs by name or other personal identifiers such as address, telephone number or Social Security number.

iv. Collective Counsel and counsel for Defendants shall have fifteen (15) business days to review, verify, and comment on the calculations provided by the Claims Administrator. The Claims Administrator shall review any comments received from Collective Counsel and/or counsel for Defendants and shall finalize the potential Settlement Payment calculations within ten (10) business days thereafter. The Claims Administrator's determination (after input from Collective Counsel and counsel for Defendants) of the potential Settlement Payment amounts for each member of the Settlement Collective shall be final.

v. Within thirty (30) calendar days after the Claims Administrator has finalized the potential Settlement Payment amounts for each member of the Settlement Collective, the Claims Administrator shall send copies of the Settlement Notice and Claim Form approved by the Court in its Approval Order to all Settlement Collective class members, via first-class regular U.S. mail, using the most current mailing address in the Parties' possession. The Settlement Notice shall include the minimum amount that will be paid to each Settlement Collective class member, the procedure by which the Revised Maximum Gross Settlement Amount will be distributed, and the amounts to be sought as an Incentive Payment, and as a Fee Award. The proposed Settlement Notice is attached hereto as Exhibit B. The Settlement Notice shall also include a Claim Form in the form attached hereto as Exhibit B.

vi. Any Settlement Notices and Claim Forms returned to the Claims Administrator with a forwarding address shall be re-mailed by the Claims Administrator within seven (7) business days following receipt of the returned mail. If any Settlement Notice and Claim Form is returned to the Claims Administrator without a forwarding address, the Claims Administrator shall undertake reasonable efforts, such as skip traces, to search for the correct address (for example, by using the Lexis-Nexis "Accurint" database), and shall promptly re-mail the Settlement Notices and Claim Forms to any newly-found addresses.

vii. The Claims Administrator shall not post on its website the names or any

other identifying information concerning the Settlement Classes, the Settlement Agreement, or any other documents that are filed with the Court under seal, if any.

viii. The Claims Administrator shall re-mail once only Court-approved Settlement Notice and Claim Form Packages to any member of the Settlement Classes who contacts the Claims Administrator during the time period between the initial mailing of the Settlement Notice and Claim Form Packages and the Bar Date and requests that a Settlement Notice and Claim Form Package be re-mailed. No other communications shall be sent by either Party or their counsel to the members of the Settlement Classes. Class Counsel shall not be barred by this Settlement Agreement from communicating with Plaintiff or Opt-In Plaintiffs or from responding to inquiries they receive from members of the Settlement Classes, although they are barred from initiating any contact through the end of the Bar Date with members of the Settlement Classes who are not Plaintiff or Opt-In Plaintiffs. Nothing in this Settlement Agreement shall be construed to prevent Defendant from communicating with its employees or responding to inquiries from its employees regarding any matter.

ix. <u>Claim Form</u>.

1. In order to be an Authorized Claimant, members of the Settlement Classes must properly complete and timely return a Claim Form for receipt by the Claims Administrator on or before the Bar Date. Any member of the Settlement Collective who does not return a

Claim Form to the Administrator in compliance with the preceding paragraph shall be deemed to have waived any right to receive a payment in conjunction with the Parties' Settlement.

2. A required mailing sent by a member of the Settlement Collective shall be considered timely pursuant to this Agreement if the mailing is sent by U.S. Mail and postmarked on or before the applicable deadline. Notwithstanding this requirement, if a member of the Settlement Collective fails to send a required form by U.S. Mail, then the form will not be considered valid unless actually received by the Administrator by the applicable deadline.
3. Within thirty (30) calendar days after deadline for the submission of Claim Form Packages to the Claims Administrator, the Claims Administrator shall certify jointly to Collective Counsel and Defendants' counsel (1) a list of all members of the Settlement Collective who timely filed a Claim Form Package, along with copies of the Claim Form Packages received; and (2) the total Settlement Payment due to each Authorized Claimant, and provide that information to Collective Counsel and Defendants' counsel on a CD.

As soon as practicable following the Bar Date and the resolution of any deficient submissions, the Claims Administrator shall provide Collective Counsel and Defendants' counsel with a declaration of due diligence and proof of mailing with regard to the mailing of the Settlement Notice and

Claim Form Packages. Collective Counsel shall bear the responsibility of filing this declaration with the Court.

## XII. NO RETALIATION

75. Defendants shall not take any adverse employment action against the Plaintiff or any Settlement Collective member because any of them (a) instituted or in any way participated, or not to participate, in this Action, or (b) elects or indicates an intention to object to the Settlement memorialized in this Stipulation or any order entered by the Court approving its terms.

76. Defendants will not discourage any Settlement Collective member from opting into the Action and participating in the Settlement.

## XIII. PROCEDURE FOR PAYMENT OF MONIES

77. After the Effective Date, and solely for purposes of this Stipulation and Settlement Agreement, the Settlement Awards shall be distributed in the following manner:

a. Within ten (10) calendar days of the Effective Date, Defendants shall provide the Claims Administrator or Qualified Settlement Fund with funds sufficient to enable the Claims Administrator to satisfy the payment obligations to Authorized Claimants, Collective Counsel's Fees, Costs and Expenses, and any Incentive Payment.

b. Within thirty (30) calendar days after the Effective Date, but not before the expiration of fifteen (15) calendar days following the Effective Date, the Claims Administrator shall mail Settlement Payments, including any Incentive Payment, to Authorized Claimants, less deductions and contributions authorized pursuant to paragraphs 49 and 50 of this Stipulation and Settlement Agreement. The Claims Administrator shall mail these funds to the address provided by the Authorized

Claimant on his or her Claim Form Package or at an updated address provided by the Authorized Claimant.

c. Settlement Award checks shall be mailed via first-class U.S. mail, to the respective Authorized Claimants using the mailing address submitted by the Authorized Claimants to the Claims Administrator.

b. Checks paid to the Authorized Claimants shall remain valid and negotiable for one hundred-twenty (120) calendar days from the date of their issuance and will thereafter automatically be cancelled if not negotiated within that time. In such event, the Authorized Claimant's claim will be deemed null and void and of no further force and effect and the funds represented by such check shall revert to Defendants.

78. If any disputes arise regarding eligibility for any Settlement Payments under the terms of this Stipulation and Settlement Agreement, the Parties shall use their best efforts to resolve them. In the absence of such resolution, the Court shall resolve such disputes.

79. Following payment of the Settlement Payments, the Claims Administrator shall provide a written certification of such payments to counsel for the Parties.

## XIV. AGREEMENT THAT DEFENDANT IS PAYING OVERTIME DURING TRAINING PERIOD

80. Defendants agree that, before the date the Approval Hearing is held by the Court, they will reclassify all Assistant Store Managers as non-exempt and eligible for overtime if they work in excess of forty hours in a workweek during the period of their training for the Assistant Store Manager position.

## XV. TERMINATION OF THE SETTLEMENT AGREEMENT

81. In the event: (i) the Court does not finally approve the Settlement as provided

herein; (ii) the Court does not enter the Settlement Order and Judgment as provided herein which becomes final as a result of the occurrence of the Effective Date; or (iii) the Settlement does not become final for any other reason, this Stipulation and Settlement Agreement shall be null and void *ab initio* and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as withdrawn or vacated by stipulation of the Parties. In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Stipulation and Settlement Agreement, and the Parties shall proceed in all respects as if this Stipulation and Settlement Agreement had not been executed. In the event an appeal is filed from the Settlement Order and Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

## XVI. COMPUTATION OF TIME

82. For the purposes of this Stipulation and Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by Fed. R. Civ. P. 6(a)(4)), such time period shall be continued to the following business day.

## XVII. PARTIES' AUTHORITY

84. The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

85. Plaintiff acknowledges that she is, together with Collective Counsel, fully authorized to bind herself to all terms set forth in this Settlement Agreement.

86. It is agreed that because the members of the Settlement Collective are so numerous, it is impossible or impractical to have each member of the Settlement Collective execute the Settlement Agreement. The Settlement Notice and Approval Order will advise

all members of the Settlement Collective of the binding nature of the release, and that the release will have the same force and effect upon members of the Settlement Collective as if the Settlement Agreement were executed by each member of the Settlement Collective.

## XVIII. MUTUAL FULL COOPERATION

87. The Parties agree to fully cooperate with each other to accomplish the terms of the Settlement Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the Settlement Agreement. The Parties to the Settlement Agreement shall use their best efforts, including all efforts contemplated by the Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the Settlement Agreement and the terms set forth herein. As soon as practicable after execution of the Settlement Agreement, Plaintiff and Plaintiff's counsel shall, with the assistance and cooperation of Defendants and Defendants' counsel, take all necessary steps to secure the Court's approval of the Settlement Agreement.

## XIX. EXHIBITS AND HEADINGS

88. This Stipulation includes both the terms set forth in this Agreement herein and the attached Exhibits A through C, which are incorporated by reference as though fully set forth herein. All exhibits to this Stipulation and Settlement Agreement are an integral part of the Settlement. The descriptive headings of any paragraphs or sections of this document are inserted for convenience of reference only and do not constitute a part of this Settlement.

## XX. INTERIM STAY OF PROCEEDINGS

89. The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, and agree to move the Court for an Order directing the same.

## XXI. AMENDMENT OR MODIFICATION

90. This Stipulation and Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

## XXII. CONSTRUCTION AND INTERPRETATION

91. The Parties hereto agree that the terms and conditions of the Settlement Agreement are the result of lengthy, intensive, arms-length negotiations among the Parties, and the Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her, or its counsel participated in the drafting of the Settlement Agreement.

## XXIII. ENTIRE AGREEMENT

92. This Stipulation and Settlement Agreement and the attached exhibits constitute the entire agreement between the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Stipulation and Settlement Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that it has not relied on any promise, representation or warranty, express or implied, not contained in this document.

## XXIV. AUTHORIZATION TO ENTER INTO STIPULATION AND SETTLEMENT AGREEMENT

93. By signing this Stipulation and Settlement Agreement, the Parties expressly authorize their respective attorneys to take all appropriate action required or permitted to be taken by such Parties pursuant to this Stipulation and Settlement Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms hereof. The Parties

agree that they and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Stipulation and Settlement Agreement, the Parties shall seek the assistance of the Court to resolve such disagreement.

**XXV. <u>BINDING ON SUCCESSORS AND ASSIGNS</u>**

94. This Stipulation and Settlement Agreement shall be binding upon, and inure to the benefit of the heirs, beneficiaries, successors or assigns of Plaintiff, Defendants and the Authorized Claimants.

**XXVI. <u>GOVERNING LAW</u>**

95. All terms of this Stipulation and Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the Federal Rules of Civil Procedure, where applicable, or the laws of the State of Maryland, without regard to its principles of conflict of laws.

**XXVII. <u>COUNTERPARTS</u>**

96. The Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

**XXVIII. <u>COOPERATION AND DRAFTING</u>**

97. Each of the Parties has cooperated in the drafting and preparation of this Stipulation and Settlement Agreement; hence the drafting of it shall not be construed for or against any of the Parties.

**XXIX. JURISDICTION OF THE COURT**

98. Any dispute regarding the interpretation or validity of or otherwise arising out of this Stipulation and Settlement Agreement, or relating to the Action or the Released Claims, shall be subject to the exclusive jurisdiction of the Court. The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Stipulation and Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Stipulation and Settlement Agreement and all orders and judgments entered in connection therewith.

**XXX. INVALIDITY OF ANY PROVISION**

99. The Parties shall request the Court to first attempt to construe all provisions of this Stipulation and Settlement Agreement valid (to the extent possible consistent with applicable precedents) before declaring any provision of this Stipulation and Settlement Agreement invalid.

**XXXI. PLAINTIFFS' WAIVER OF RIGHT TO OBJECT**

100. By signing this Stipulation and Settlement Agreement, Plaintiff agrees to be bound by the terms herein and further agree not to object to any of the terms of this Stipulation and Settlement Agreement. Any such objection shall therefore be void and of no force or effect.

**XXXII. TOLLING OF THE STATUTE OF LIMITATIONS**

101. On November 1, 2012, the running of the statutes of limitations for any members of the Settlement Collective was tolled by order of the Court. The Parties agree that, upon the entry by the Court of the Approval Order, the tolling of the statute of limitations shall cease upon the Bar Date and the statute of limitations will continue to run for any members of the Settlement Collective who did not become an Opt-in Plaintiff by the Bar Date, and shall request that the Court so order.

IN WITNESS WHEREOF, the Parties have executed this Stipulation as of the date first set forth below.

PLAINTIFF: Date: 11/14/13

Valerie Fumei
ON BEHALF OF HERSELF
AND THE SETTLEMENT COLLECTIVE

COLLECTIVE
COUNSEL: Date:

WHITFIELD BRYSON & MASON LLP
Nicholas A. Migliaccio

Date:

KLAFTER OLSEN & LESSER LLP
Seth R. Lesser
Fran L. Rudich
Michael Palitz

Date:

AKARAS LAW OFFICES
Andreas N. Akaras

DEFENDANT FIVE GUYS ENTERPRISES, LLC:

Date:

By:
Printed Name:
Its:

DEFENDANT FIVE GUYS OPERATIONS, LLC:

Date:

By:
Printed Name:
Its:

DEFENDANT FIVE GUYS OPERATIONS, LLC (AS SUCCESSOR IN INTEREST TO DEFENDANT FIVE GUYS KA, LLC):

Date:

By:
Printed Name:
Its:

IN WITNESS WHEREOF, the Parties have executed this Stipulation as of the date first set forth below.

**PLAINTIFF:** ______________________ Date: __________________

Valerie Turner
**ON BEHALF OF HERSELF**
**AND THE SETTLEMENT COLLECTIVE**

**COLLECTIVE COUNSEL:** ______________________ Date: 11/23/13

**WHITFIELD BRYSON & MASON LLP**
Nicholas A. Migliaccio

______________________ Date: __________________

**KLAFTER OLSEN & LESSER LLP**
Seth R. Lesser
Fran L. Rudich
Michael Palitz

______________________ Date: November 22, 2013

**AKARAS LAW OFFICES**
Andreas N. Akaras

**DEFENDANT FIVE GUYS ENTERPRISES, LLC:**

______________________ Date: __________________

By:
Printed Name:
Its:

**DEFENDANT FIVE GUYS OPERATIONS, LLC:**

______________________ Date: __________________

By:
Printed Name:
Its:

**DEFENDANT FIVE GUYS OPERATIONS, LLC (AS SUCCESSOR IN INTEREST TO DEFENDANT FIVE GUYS RA, LLC):**

______________________ Date: __________________

By:
Printed Name:
Its:

IN WITNESS WHEREOF, the Parties have executed this Stipulation as of the date first set forth below.

**PLAINTIFF:** ______________________ Date: __________________

Valerie Turner
**ON BEHALF OF HERSELF**
**AND THE SETTLEMENT COLLECTIVE**

**COLLECTIVE COUNSEL:** ______________________ Date: __________________

**WHITFIELD BRYSON & MASON LLP**
Nicholas A. Migliaccio

______________________ Date: 11/15/13

**KLAFTER OLSEN & LESSER LLP**
Seth R. Lesser
Fran L. Rudich
Michael Palitz

______________________ Date: __________________

**AKARAS LAW OFFICES**
Andreas N. Akaras

**DEFENDANT FIVE GUYS ENTERPRISES, LLC:**

______________________ Date: __________________

By:
Printed Name:
Its:

**DEFENDANT FIVE GUYS OPERATIONS, LLC:**

______________________ Date: __________________

By:
Printed Name:
Its:

**DEFENDANT FIVE GUYS OPERATIONS, LLC (AS SUCCESSOR IN INTEREST TO DEFENDANT FIVE GUYS RA, LLC):**

______________________ Date: __________________

By:
Printed Name:

IN WITNESS WHEREOF, the Parties have executed this Stipulation as of the date first set forth below.

**PLAINTIFF:**

_________________ Date: _______________

Valerie Turner
**ON BEHALF OF HERSELF**
**AND THE SETTLEMENT COLLECTIVE**

**COLLECTIVE COUNSEL:**

_________________ Date: _______________

**WHITFIELD BRYSON & MASON LLP**
Nicholas A. Migliaccio

_________________ Date: _______________

**KLAFTER OLSEN & LESSER LLP**
Seth R. Lesser
Fran L. Rudich
Michael Palitz

_________________ Date: _______________

**AKARAS LAW OFFICES**
Andreas N. Akaras

**DEFENDANT FIVE GUYS ENTERPRISES, LLC:**

J K Murrell Date: 12/3/13

By: Jane K. Murrell
Printed Name: Jane K. Murrell
Its: Secretary/Treasurer

**DEFENDANT FIVE GUYS OPERATIONS, LLC:**

J K Murrell Date: 12/3/13

By:
Printed Name: Jane K. Murrell
Its: Secretary/Treasurer

**DEFENDANT FIVE GUYS OPERATIONS, LLC (AS SUCCESSOR IN INTEREST TO DEFENDANT FIVE GUYS RA, LLC):**

J K Murrell Date: 12/3/13

By:
Printed Name:
Its:

**DEFENDANTS' COUNSEL:** Date: 12/12/13

**LITTLER MENDELSON, P.C.**
Joshua B. Waxman
Richard W. Black